# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANTHONY GUERRIERO and**                   Chapter 7
**MARIA GUERRIERO,**                         Case No. 07-14648-JNF

      Debtors
~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion of United States Trustee ("UST") for Order Dismissing Case under 11 U.S.C. § 707(b)(1) Based on Presumption of Abuse Arising under 11 U.S.C. § 707(b)(2).   Anthony and Maria Guerriero (the "Debtors") oppose the Motion.

The Court conducted a hearing on the Motion and the Debtors' opposition on November 21, 2007 at which counsel to the parties represented that the facts were undisputed.  On December 6, 2007, the parties filed a "Stipulation of Facts."  The legal issue presented is whether, in applying the means test and determining whether the presumption of abuse arises, the Debtors are entitled to reduce their "current monthly income" ("CMI") by payments to their mortgagee pursuant to 11 U.S.C. § 707(b)(2)(A)(iii)

1

where they have indicated their intention to surrender the real property subject to the mortgage.[1]   The issue before the Court is not new  and is representative of the interpretative challenges engendered by passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  *See generally*, Hon. Thomas F. Waldron and Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA*, 81 Amer. Bankr. L. J. 195 (2007).  Bankruptcy courts are divided on the issue, and it remains unresolved.  Within the First Circuit, two bankruptcy judges have answered the question presented in the affirmative. *See* In re Hayes, 376 B.R. 55 (Bankr. D. Mass. 2007), and In re Hartwick, 359 B.R. 16 (Bankr. D. N.H. 2007), but courts in other jurisdictions have concluded that debtors may not deduct payments for secured debt if the collateral securing the debt has been or will be surrendered. *See, e.g.,* In re Skaggs, 349 B.R. 594 (Bankr. D. Mo. 2006).

## II. STIPULATED FACTS

The Debtors, a married couple, filed a Chapter 7 petition on July 27, 2007.  Mr. Guerriero is a driver for Kamco Services, and Mrs. Guerriero is an office manager for Burnham Associates.  The Debtors' CMI, the definition of which is set forth at 101 U.S.C. § 101(10A), exceeds the applicable median income for a household size of two in the Commonwealth of Massachusetts.  Moreover, the debts owed by the Debtors are primarily

---

[1]The Debtors pose the issue as follows: "Whether 11 U.S.C. § 707(b)(2)(A)(iii), providing for deduction of payments due to secured creditor from current monthly income should be judicially rewritten to contain an implied condition that the payment of the secured debt is being made at the time of the filing of the petition."

consumer obligations.  Because the Debtors' income is above the median income for their

family size and location, they were required to calculate and deduct their expenses

pursuant to 11 U.S.C. § 707(b)(2)(A)(i)-(iv) and to complete Part V of Form 22A.

The Debtors reside in an apartment located at 1304 Village Road East, Norwood,

Massachusetts.  They moved there prior to filing their bankruptcy petition.  At the time

they filed their Chapter 7 petition, the Debtors held an interest in residential real property

located at 25 Cross Street, Salem, Massachusetts (the Cross Street property").  On Schedule

A-Real Property, they listed the current value of the Cross Street property as $250,000,

subject to a secured claim in the sum of $358,706 held by Saxon Mortgage Services, Inc.

("Saxon").  On Schedule A, they noted that the "property is being surrendered."[2]

The Debtors have two mortgages with Saxon which encumber the Cross Street

property.  They testified at their section 341(a) meeting of creditors that they had not made

a mortgage payment on either the first or second mortgage since the Spring of 2007.  In

their Statement of Financial Affairs, they disclosed that Saxon had commenced a

foreclosure proceeding.

The Debtors occupied the Cross Street property through June 15, 2007, at which time

they entered into a one-year residential lease for an apartment at Windsor Gardens and

moved to Norwood, Massachusetts.  Their monthly rental expense, as listed on Schedule

J-Current Expenditures of Individual Debtor(s) is $1,510.  On their Amended Official Form

---

[2] The Debtors also indicated their intention to surrender the property on their
"Chapter 7 Individual Debtor's Statement of Intention."

22A in Part V, "Calculation of Deduction allowed under § 707(b)(2)," Subpart C, "Deductions for Debt Payments," on line 42, the Debtors listed "[f]uture payments on secured claims" totaling $2,442, although they have made no post-petition payments to Saxon.[3] They did not deduct any expense on line 20B under the IRS Local Standards for "housing and utilities; mortgage/rent expense."

Saxon filed a Motion for Relief from the Automatic Stay on August 22, 2007 seeking authority to foreclose its first mortgage on the Cross Street property.  On September 5, 2007, in the absence of objections, this Court granted Saxon's Motion.  As of December 6, 2007, when the parties filed their Stipulation of Facts, Saxon had not conducted a foreclosure sale and a mortgage discharge had not been recorded in the Essex County Registry of Deeds.

The section 341(a) meeting of creditors was held on August 23, 2007 and continued to September 19, 2007.  On August 31, 2007, the UST filed a Statement that she was currently unable to determine whether the Debtors' case would be presumed to abusive. On October 1, 2007, the UST filed the Motion to Dismiss now before the Court.  *See* 11

---

[3] Official Form 22A in effect at the time the Debtors filed their petition, at line 42, provides:

> Future payments on secured claims.  For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, and state the Average Monthly Payment.  The Average Monthly Payment is the total of all amounts contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60.  Mortgage debts should include payments of taxes and insurance required by the mortgage. . . .

U.S.C. § 704(b).

## III. THE STATUTE

Section 707(b) provides in relevant part the following:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

(II) $10,950.

(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably

5

necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. . . .

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in

subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

(I) *the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition*; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

11 U.S.C.§ 707(b)(2)(A)(emphasis supplied).

The UST explains the mathematics governing when the presumption of abuse arises under section 707(b):

[I]f after deducting all allowable expenses from a debtor's current monthly

7

income, the debtor has less than $109.58 per month in monthly net income
(*i.e.*, less than $6,575 to fund a 60 month plan), the filing is not presumed
abusive.  If a debtor has monthly net income of $182.50 or more (*i.e.*, at least
$10,950 to fund a 60 month plan), the filing is presumed abusive.  Finally, if
a debtor's monthly income is more than $109.58 but less than $182.50, the
case will be presumed abusive if that sum, when multiplied by 60 months
will pay 25% or mor of the debtor's non-priority unsecured debts.

UST's Motion to Dismiss at p.2, ¶ 4.  *See also* In re Hayes, 376 B.R. at 58. Debtors may rebut

the presumption of abuse with reference to "special circumstances, such as a serious

medical condition or a call or order to active duty in the Armed Forces." *See* 11 U.S.C. §

707(b)(2)(B).  If the presumption of abuse does not arise, or is rebutted, the Court may still

dismiss a Chapter 7 case if the debtor filed the petition in bad faith or the totality of the

circumstances establishes abuse.  *See* 11 U.S.C. 707(b)(3).

## IV. POSITIONS OF THE PARTIES

A. The UST

Consistent with her duties, the UST reviewed all materials filed and provided by the

Debtors, including the Debtors' Schedules, Statement of Financial Affairs, payment advices,

and amended Form 22A in order to determine whether granting them relief under Chapter

7 would be presumptively abusive.  *See* 11 U.S.C. § 704(b)(1)(A).  After reviewing the

documentation submitted by the Debtors, the UST concluded that the presumption of

abuse arose.  To reach her conclusion, she recalculated the Debtors' allowable expenses and

deductions and prepared an adjusted Form 22A.  In sum, the UST increased the Debtors'

allowable deduction from $-0- to $1,225 for rental expenses on line 20B using the IRS Local

Standards for "housing and utilities; mortgage/rent expense" in Part V, Subpart A,

"Deductions under Standards of the Internal Revenue Service (IRS)" of Form 22A.

Additionally, she increased the Debtors' allowable deductions from $393 to $782 on line

22 using the IRS Local Standards for "transportation; vehicle operation/public

transportation expense." Finally, she eliminated the Debtors' $2,440 deduction for the

payment of secured debt (Saxon's first and second mortgages) on line 42 of Subpart C. The

following chart summarizes the disparity in the treatment of the Debtors' expenses and

deductions as set forth in the Debtors' amended Form 22A and the adjusted Form 22A

created by the UST.

| Part VI. DETERMINATION OF § 707(B)(2) PRESUMPTION | Debtors | UST |
|---|---|---|
| Current monthly income for § 707(b)(2) | $6,458 | $6,458 |
| Total of all deductions allowed under § 707(b)(2) | $6,738 | $5,966.60 |
| Monthly disposable income under § 707(b) | ($280) | $491.40 |
| 60-month disposable income under § 707(b) | ($16,800) | $29,484 |

The UST based her decision to recalculate the Debtors' deductions based upon cases

such as In re Ray, 362 B.R. 680 (Bankr. D.S.C. 2007), In re Harris, 353 B.R. 304 (Bankr. E.D.

Okla. 2006), and In re Skaggs, 349 B.R. 594 (Bankr. E.D. Mo. 2006), which hold that debtors

who indicate their intention to surrender collateral are not entitled to take an expense

deduction for payments on secured debts pursuant to section 707(b)(2)(A)(iii). Because the

Debtors' actual monthly disposable income based upon the UST's adjusted Form 22A

shows disposable income of $491.40, an amount which exceeds the $182.50 threshold for

the presumption of abuse, the UST seeks dismissal of the Debtors' bankruptcy case.

B. <u>The Debtors</u>

The Debtors rely upon the decisions in <u>In re Hayes</u>, 376 B.R. 55 (Bankr. D. Mass. 2007), and <u>In re Hartwick</u>, 359 B.R. 16 (Bankr. D. N.H. 2007), in support of their position that the UST's Motion to Dismiss lacks merits and must be denied. They emphasize use of the term "shall" in section 707(b)(2)(A)(iii) and maintain that the Court lacks discretion in interpreting the plain meaning of the statute.

## V. DISCUSSION

In <u>Hayes</u>, Chief Judge Boroff ably articulated the different interpretations of section 707(b)(2)(A)(iii)(I), which governs the outcome of this case, specifically the meaning of the phrase "scheduled as contractually due." After the obligatory nod to the Supreme Court's command to enforce a statute according to its terms if the language is plain and does not produce an absurd result, *see* <u>United States v. Ron Pair Enter., Inc.</u>, 489 U.S. 235, 241 (1989), Chief Judge Boroff discussed whether the word "scheduled" refers to the debtor's bankruptcy schedules, or whether it should be given its common, dictionary definition. *Compare* <u>In re Skaggs</u>, 349 B.R. at 599 ("the Debtors' schedules and statements form the basis from which the Court should determine whether a debt is 'scheduled as contractually due.'"); <u>In re Harris</u>, 353 B.R. 304 (Bankr. E.D. Okla. 2006)(same) *with* <u>In re Walker</u>, No. 05-15010-WHD, 2006 WL 1314125 at *4 (Bankr. N. D. Ga. May 1, 2006)("[T]he plain language of the statute permits a reduction from CMI for payments on secured debts that have not been reaffirmed. Congress' [sic] choice of the phrase, 'scheduled as contractually due,' suggests that, in determining which payments should be averaged for the deduction, the

Court should determine how many payments are owed under the contract for each secured debt at the time of filing.") In re Longo, 364 B.R. 161 (Bankr. D. Conn. 2007)(same), In re Randle, 358 B.R. 360 (Bankr. N.D. Ill. 2006), aff'd, Randle v. Neary (In re Randle), No. 07C631, 2007 WL 2668727 (N.D. Ill. July 20, 2007)(same); In re Sorrell, 359 B.R. 167 (Banrk. S.D. Ohio 2007)(same); In re Hartwick, 359 B.R. 16 (Bankr. D. N.H. 2007); In re Nockerts, 357 B.R. 497 (Bankr. E.D. Wis. 2006)(same).[4]  As noted by the court in In re Chang, No. 07-50484, 2007 WL 3034679 (Bankr. N.D. Cal. Oct. 16, 2007), the majority of courts holds that debtors are authorized to deduct monthly payments on secured debts where the debtor intends to surrender the collateral securing the debt.

---

[4] A third line of cases hold that

> [T]he mere act of declaring an intent to surrender collateral on a Statement of Intention does not extinguish the Debtors' right to deduct those payments under § 707(b)(2)(A)(iii). However, for purposes of a motion to dismiss based on the presumption of abuse formula found in § 707(b)(2)(A) (Presumption of Abuse Motion), the relevant date on which calculations should be based is the date of the filing of the motion, not the date of the filing of the petition. Therefore, any events occurring post-petition and up to the date of the filing of the motion must be taken into account in applying the means test. Thus, if a debtor has carried through with his intent to surrender the collateral and relief from stay has been granted before the filing of the Presumption of Abuse Motion, the payments on that debt would not be counted under § 707(b)(2)(A)(iii).

In re Ray, 362 B.R. at 683-84 (citing In re Singletary, 354 B.R. 455, 458 Bankr. D.Tex. 2006)).  The court in In re Chang, No. 07-50484-ASW, 2007 WL 3034679 (Bankr. N.D. Cal. Oct. 16, 2007), observed that the court in Singletary was constrained by Fifth Circuit precedent, namely In re Cortez, 457 F.3d 448 (5th Cir. 2006).  Noting that it was not constrained by that precedent, the court in Chang concluded that "taking post-petition events into account . . .  contravenes the purpose of the means test as an objective analysis, to be performed at the time the petition is filed.  2007 WL 3034679 at *3.

11

In <u>Hayes</u>, Chief Judge Boroff observed:

> [E]ven if this Court were to conclude that the Trustee's interpretation of the statute is the appropriate one-i.e., that "scheduled as" refers to the debtor's bankruptcy schedules-this would "really be a distinction without a difference." <u>In re Haar</u>, 360 B.R. at 766; *see also* <u>In re Randle</u>, 358 B.R. at 365. The "scheduling" of a secured debt on the debtor's bankruptcy petition does not change the fact that the payments are "contractually due." <u>In re Haar</u>, 360 B.R. at 764, 765; <u>In re Sorrell</u>, 359 B.R. at 184; <u>In re Randle</u>, 358 B.R. at 365; <u>In re Singletary</u>, 354 B.R. at 468. Nor does declaring an intention to ultimately surrender property to the creditor abrogate a debtor's contractual obligations. <u>In re Longo</u>, 364 B.R. at 165-66; <u>In re Haar</u>, 360 B.R. at 764; <u>In re Sorrell</u>, 359 B.R. at 184; <u>In re Singletary</u>, 354 B.R. at 467 n. 11, 468; <u>In re Walker</u>, 2006 WL 1314123 at *4, 2006 Bankr.LEXIS 845 at *13-14.

<u>Hayes</u>, 376 B.R. at 62-63. Turning to the phrase, "in each of the 60 months following the date of the petition," the <u>Hayes</u> court further observed that "the term 'following' denotes a look forward, specifically, a look sixty months into the debtor' future." <u>Id.</u> at 63. Chief Judge Boroff concluded, however, that

> [a]part from the obvious practical difficulties the Court would encounter in trying to determine which debtors will actually make all payments required under their contracts with secured creditors during each of the sixty months following the petition, it is equally clear that the plain language of the statute does not contemplate the Court assuming this kind of predictive role.

<u>Id.</u> Chief Judge Boroff added: "Nothing in the phrase 'following the date of the petition' suggests that the calculation must include only those payments actually made. Instead, the phrase modifies the preceding portion of the statute which refers to those payments that are 'scheduled as contractually due.'" <u>Id.</u> at 64.

The court in <u>Hayes</u> also considered the legislative history of BAPCPA, although it implied that reference to it was unnecessary because it found that the statute was not ambiguous and did not produce an absurd result. <u>Id.</u> at 64-65. Recognizing that Congress

12

may have intended to identify debtors capable of paying a percentage of their unsecured

debts in creating the means test under section 707(b)(2) and to deny them a discharge or

push them into Chapter 13, Chief Judge Boroff determined that Congress intended for the

means test to be mechanical and to reduce judicial discretion.  Citing Randle, 358 B.R. at

364, one of only two pertinent decisions that appears to have been the subject of appellate

review,[5] Chief Judge Boroff concluded:

> The deduction of secured payments due at the time of the petition filing-even
> if the debtor intends to eventually surrender the property-is consistent with
> the mechanical, discretion-void nature of the means test. *See* In re Kogler, 368
> B.R. at 790-91; Walker, 2006 WL 1314123 at *6, 2006 Bankr.LEXIS 845 at
> *18-19. To read into § 707(b)(2)(A)(iii)(I) a requirement that the court inquire
> into possible future outcomes in each debtor's case "is completely contrary
> to Congress' intent because it requires the kind of case-by-case adjustment
> based on a debtor's individual circumstances for the presumption of abuse
> that Congress rejected." In re Randle, 358 B.R. at 364.

Hayes, 376 B.R. at 65-66 (footnotes omitted).

## VI. CONCLUSION

This Court has reviewed the decisions cited by the parties and by the court in Hayes.

Courts on all sides of the issue make valid points.  The language of the statue, which is

simultaneously backward and forward looking, invites debate. This Court concludes that

decisions, such as Chief Judge Boroff's decision in Hayes, and the cases upon which he

relied, are the better reasoned. In addition, adopting the holding in Hayes avoids

---

[5] *See* Randle v. Neary (In re Randle), No. 07C631, 2007 WL 2668727 (N.D. Ill. July
20, 2007);  Fokkena v. Hartwick (In re Hartwick), 373 B.R. 645 (D. Minn. 2007), relying
on both the bankruptcy court and district court decisions in Randle and reaching the
same conclusion with respect to section 707(b)(2)(A)(iii).

13

inconsistency within the district of Massachusetts, and, in view of Judge Deasy's decision

in <u>Hartwick</u>, 359 B.R. 16 (Bankr. D. N.H. 2007), inconsistency within the circuit as well.

In view of the foregoing, the Court shall enter an order denying the UST's Motion

to Dismiss without prejudice to the filing of a motion under 11 U.S.C. § 707(b)(3).

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 4, 2008
cc: Paula R.C. Bachtell, Esq., Daniel Gindes, Esq.

15